IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| KAMERON ROSS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 3:19-cv-00726 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| DAVIDSON COUNTY SHERIFF'S OFFICE, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff Kameron Ross, a pre-trial detainee currently in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against the Davidson County Sheriff's Office, Correct Care Solution, and Trenady Food Service. (Doc. No. 1).

### I. Motion to Add Supplemental Pleadings

After he filed his complaint, Plaintiff filed a motion to add supplemental pleadings. (Doc. No. 4). In his motion, Plaintiff elaborates on allegations he made in his original complaint. He also alleges for the first time that his living quarters are "nasty" (Doc. No. 4 at 3) and the showers are never clean. He further alleges that he is a 5' 9" adult male whose average weight is 180 pounds but, due to the lack of nutritionally inadequate meals at the facility, he now weighs 169 pounds. (*Id*. at 4).

Rule 15(d) of the Federal Rules of Civil Procedure permits a party to file a motion seeking permission to serve a supplemental pleading "setting out any transaction, occurrence, or event that happened after the ate of the pleading to be supplemented." Fed. R. Civ. P. 15(d). However, the new allegations Plaintiff makes in his motion concern events that occurred prior to Plaintiff filing

1

his original complaint. Nevertheless, Rule 15(a)(2) of the Federal Rules of Civil Procedure permits a plaintiff to amend his complaint with permission of the Court or with the opposing party's consent. Fed. R. Civ. P. 15(a)(2). The rule provides that leave to amend should be freely given "when justice so requires." *Id*. In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.,* 427 F.3d 996, 1001 (6th Cir. 2005).

Here, the proposed amendments to the complaint provide additional context for the claims raised in the original complaint. The amendments also seek to add new claims. With respect to the futility of the amendments, the Court finds that the proposed amendments to the complaint raise legal and factual issues that the Court should consider when evaluating Plaintiff's complaints concerning the conditions of his confinement at the Davidson County Sheriff's Office. There appears to be no undue prejudice to the opposing parties by permitting Plaintiff to amend his complaint at this time; no Defendant has been served. The Court therefore will grant the motion (Doc. No. 4), construed as a motion to amend the complaint under Rule 15(a)(2).

Accordingly, the Court will screen the original complaint, as informed by the Plaintiff's amendments to the original complaint, pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A.

## II. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly

requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. Section 1983 Standard

42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws…." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

### III. Alleged Facts

The complaint, as amended, primarily concerns the conditions of Plaintiff's confinement while detained at the Davidson County Sheriff's Office. According to the complaint, Plaintiff became very sick on June 7, 2018, due to improperly-cooked food. In July of 2018, Plaintiff developed scabies but was not treated until August 16, 2018, due to the "malpractice of nurses and doctors." (Doc. No. 1 at 9). Plaintiff needs additional medical treatment because he "still feal [sic] itchy" and is having "emotional problems." (*Id*.)

On January 20, 2019, Plaintiff asked numerous corrections officials if he could get a different mattress because his mattress has holes in it and "goes flat after so long of sleeping on it do [sic] to small or little amount of plush." (*Id*. at 10). None of the corrections officials would get Plaintiff a different mattress and, as a result, he is experiencing back pain, neck, and shoulder pain and he thinks he has bed sores. (*Id*.; Doc. No. 4 at 3).

On June 19, 2019, Plaintiff was served rotten and uncooked food. According to Plaintiff, he receives special meal trays for inmates with allergies, but the amount of food he receives on his allergy trays is not enough to keep him healthy because he is only served 600 to 650 calories daily. (*Id*. at 11). Plaintiff believes he has a "right to 2000 or 1800 calories" daily and "to have bread." (*Id*.) He alleges that he is a 5' 9" adult male whose average weight is 180 pounds but, due to the lack of nutritionally inadequate meals at the facility, he now weighs 169 pounds. (Doc. No. 4 at 4). On July 26, 2019, Plaintiff's tray contained a tomato, to which he is allergic.

On June 27, June 28, June 30, and June 31 of 2019, Plaintiff was not able to use the telephone due to a facility lockdown. Typically, the only time Plaintiff is permitted to make a telephone call is during his recreational period, but his mother is at work during that time. His

requests to make a short telephone call during the times his mother is available to talk have been denied. Plaintiff believes it violates his federal constitutional rights not to be able to talk to his mother.

The complaint further alleges that Plaintiff is only allowed one hour of outdoor recreational time each day. His doctor recommended that he exercise more, and he believes that he should be permitted more recreational time outside of his cell.

The complaint alleges that Plaintiff's living quarters are "nasty" and the showers are never clean. (Doc. No. 4 at 3).

Finally, the complaint alleges that inmates are not provided dental floss and Plaintiff believes this violates the Eighth Amendment.

### IV. Analysis

**A. Statute of Limitations**

"The statute of limitations applicable to a [Section] 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the [Section] 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). The applicable limitations period in Tennessee is one year. *Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016) (citing *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000) ). Here, all of the events alleged in the complaint occurred in Tennessee. Accordingly, the statute of limitations for Plaintiff's Section 1983 claims is one year.

The first two events of which Plaintiff complains—being served improperly-cooked food and not being treated promptly for scabies—occurred in June of 2018. Plaintiff filed his complaint in August of 2019. Therefore, Plaintiff's claims arising from events occurring in June of 2018 fall

outside the governing one-year statute of limitations period. These claims against all Defendants must be dismissed. Plaintiff's remaining claims fall within the one-year limitation period, and the Court will consider those claims next.

## B. Medical Care Claims

Plaintiff has named Correct Care Solution as a Defendant. However, with the dismissal of Plaintiff's claim concerning the treatment of his scabies in June of 2018, the only remaining claims that are connected in any way to Correct Care Solutions is Plaintiff's one-sentence allegation that he needs further medical attention for itching and emotional problems.

Failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*. Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*.

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

Correct Care Solutions is the entity responsible for providing medical care to inmates at the Davidson County Sheriff's Office. Because Correct Care Solutions performs a traditional state function in providing medical care to state inmates, Correct Care Solutions acts under the color of state law. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996). In order for Correct Care Solutions to be liable under Section 1983, the plaintiff must allege that there is a direct causal link between a policy or custom of Correct Care Solutions and the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). In other words, Correct Care Solutions may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 F. Appx. 338, 341 (6th Cir. 2014); *see also*

7

*Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

To hold Correct Care Solutions liable, the plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *Street*, 102 F.3d at 818. Liability attaches only if Correct Care Solutions's policies are shown to be the "moving force" behind the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 353-64 (6th Cir. 1993).

Here, the complaint does not identify any policy or custom of Correct Care Solutions related to the treatment of inmate scabies or emotional problems, nor does the complaint describe how any policy or custom of Correct Care Solutions caused Plaintiff harm. Moreover, it is altogether unclear from the complaint what injuries Plaintiff alleges; Plaintiff merely states that he is itching and needs treatment for unspecified "emotional problems." Therefore, the Court concludes that the complaint fails to state Section 1983 claims against Defendant Correct Care Solutions upon which relief may be granted, and these claims will be dismissed.

## C. Conditions of Confinement Claims

The Fourteenth Amendment's due process clause protects pretrial detainees from cruel and unusual punishments. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Fourteenth Amendment due process claims "are analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). In order to state a claim that prison conditions violate the Constitution, a pretrial detainee-plaintiff must allege that he has been subjected to deprivations so serious that he was deprived of the "minimal civilized

measure of life's necessities" and that jail officials acted wantonly, with deliberate indifference to his serious needs. *Richmond v. Settles*, 450 F. App'x 448, 454-55 (6th Cir. 2011). In the context of conditions of confinement claims, only "extreme deprivations" can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Allegations of temporary inconveniences are insufficient to state a claim. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Agramonte v. Shartle*, 491 F. App'x 557, 559 (6th Cir. 2012) (inmates cannot expect the amenities, conveniences and services of a good hotel).

1. Mattress Claims

Plaintiff's allegations concerning the lack of a better mattress do not rise to the level of a constitutional violation. "Being given a mattress only one-fourth to one-half inch thick fall shorts of being an intolerable condition. It doubtlessly was uncomfortable, but it cannot be described as intolerable." *White v. Tenn.*, No. 2:14-cv-115, 2014 WL 3339625, at *10 (E.D. Tenn. July 8, 2014); *see, e.g., Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir.2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment.") (citations omitted). Although Plaintiff alleges that he is experiencing back, neck, and shoulder pain as a result of sleeping on a thin mattress, he does not allege that any Defendant acted with deliberate indifference with regard to Plaintiff's requests for a thicker mattress. *See Farmer*, 511 U.S. at 834; *Peterson v. County of Monroe*, No. 12-CV-11460, 2014 WL 1328205, at *5 (E.D. Mich. Mar. 28, 2014) (dismissing prisoner-plaintiff's Section 1983 claim where plaintiff had not alleged that defendant who ordered the removal of plaintiff's mattress for twenty-four hours "was acting in spite of his knowledge of a substantial risk of serious harm."). In sum, Plaintiff's assertion that he has to sleep on a thin mattress does not constitute an extreme deprivation under the Eighth Amendment, and Plaintiff

9

has not named a defendant responsible for denying Plaintiff's request for a thicker mattress who acted with deliberate indifference to Plaintiff's serious medical needs. This claim will be dismissed.

### 2. Living Quarters and Showers

Next, Plaintiff alleges that his living quarters are "nasty" and the showers are never clean. (Doc. No. 4 at 3). The Constitution does not protect a prisoner from unpleasant prison experiences. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Nor does the Constitution mandate comfortable conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337 (1981). However, the Eighth Amendment of the United States Constitution imposes an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984).

The complaint does not allege that Plaintiff has suffered any harmful effects from the conditions of his living quarters or showers. Without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim. *See McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *4 (W.D. Mich. Sept. 10, 2007) (recommending dismissal of pro se prisoner's Section 1983 claim where "Plaintiff does not present any evidence that his exposure to black mold caused him anything beyond his unsubstantiated, perceived risk of future medical issues. In his complaint, he does not allege that he has actually suffered any effects from his alleged exposure to black mold."); *Leonard v. Ohio Dep't of Rehabilitation and Corr.*, No. 2:09-CV-961, 2010 WL 3001631, at *1 (S.D. Ohio July 30, 2010) (adopting the report and recommendation to dismiss pro se prisoner's Eighth Amendment claim based on exposure to black mold, finding that "Plaintiff

has not come forward with evidence to show that he is presently suffering a health condition due to exposure to mold and asbestos or that his future health is at risk."). Furthermore, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. This claim will be dismissed.

      3. Recreation Time

The complaint alleges that Plaintiff's doctor recommended that he exercise more, and Plaintiff only receives one hour of outdoor recreation time each day. Plaintiff believes that he should be permitted more recreational time outside of his cell. "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). The Sixth Circuit has not "set a minimum amount of time a prisoner must have access to outdoor recreation." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Rodgers v. Jabe*, 43 F.3d 1082, 1086–87 (6th Cir. 1995); *Walker v. Mintzes*, 771 F.2d 920, 927–28 (6th Cir. 1985).

Here, the complaint does not allege that the outdoor exercise restrictions have adversely affected Plaintiff's health. Courts have found that even only one hour of recreation time per day does not violate the Eighth Amendment. *See Argue*, 80 F. App'x at 429. This claim of limited hours of recreation will be dismissed.

**D. Telephone Claims**

The complaint alleges that, on four dates in June of 2019, Plaintiff was unable to use the telephone due to a facility lockdown. The complaint also alleges that, generally, the only time Plaintiff is permitted to make a telephone call is during his recreational period, but his mother is

11

at work during that time. Plaintiff has requested permission to make a short telephone call to his mother during the evening, when mother is available to talk, but his requests have been denied. Plaintiff has not been able to speak with his mother by telephone since the end of June.

"While prisoners retain the right to communicate with friends, family, and counsel while in prison, they do not have a right to unlimited telephone calls." *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). "[A] prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Id*. (internal punctuation and citations omitted). As the Supreme Court explained in *Overton v. Bazzetta*, 539 U.S. 126 (2003), some curtailment of the freedom to associate with family and friends is expected in the prison setting:

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.
> ....
> The burden ... is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.

*Id*. at 131-32 (internal citations omitted).

"[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986) (telephone access is subject to reasonable restrictions for security interests). Here, the alleged restrictions on telephone calls

during periods of facility lockdown were appropriate restrictions in light of the need for prison security.

With regard to Plaintiff's claims concerning telephone calls to his mother, the complaint does not allege that, during the time period at issue, Plaintiff has been unable to communicate with his mother by written correspondence. The Court finds that the restrictions on the timing of Plaintiff's telephone calls, given the fact that he can communicate with his mother by way of written correspondence, does not rise to the level of a constitutional violation. *See Chaffins v. Lindamood*, No. 1:17-cv-00061, at *4 (M.D. Tenn. July 24, 2017) (holding "that restrictions limiting attorney telephone calls when the segregated inmate remains able to communicate with his or her lawyer by way of written correspondence does not rise to the level of 'an atypical hardship.'"); *Anthony v. Bradley County Justice Ctr.*, No. 1:12-cv-303, 2015 WL 1206620, at *5 (E.D. Tenn. Mar. 17, 2015) ("Because the Constitution does not secure to Plaintiffs unrestricted telephone usage and because the complained of limitations on phone usage are reasonable, given the security interests of a correctional facility, Plaintiffs have failed to state a constitutional claim."); *Perez v. Federal Bureau of Prisons*, 229 F. App'x 55, 58 n.3, 2007 WL 1093322, at *2 n.3 (3d Cir. 2007) (the decision to restrict plaintiffs' phone privileges during programs and lunch and to allow few minutes of phone usage before 11:30 a.m. is one of those to which this Court will defer, noting "the telephone limitation apparently does not affect [plaintiff's] ability to communicate with people outside the prison through letter writing and visitation"). Therefore, this claim, like the others so far, must be dismissed for failure to state a Section 1983 claim upon which relief can be granted.

**E. Meals**

The complaint alleges that the amount of food Plaintiff receives on his allergy trays is not enough to keep him healthy because he is only served 600 to 650 calories daily. The complaint further alleges that Plaintiff is a 5' 9" adult male whose average weight is 180 pounds but, due to the lack of nutritionally inadequate meals at the facility, he now weighs 169 pounds. Furthermore, on one occasion, Plaintiff's tray contained a tomato, to which he is allergic.

Prison officials are required to provide inmates with adequate food. For Eighth Amendment purposes, adequate food need only be sufficient to "maintain normal health." *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977); *see Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted) (adequate food is characterized as "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'"). When it comes to meals, complaints about the preparation or quality of prison food generally do not amount to an Eighth Amendment violation. *Cunningham,* 567 F.2d 653, 659–660.

The complaint alleges that Plaintiff has lost eleven pounds but does not argue that his health has suffered as a result of insufficient nutrients, or that he otherwise suffered any serious harm as a result of his caloric intake or a one-time exposure to a tomato on his tray. Furthermore, the complaint does not allege that any named Defendant knew of and disregarded an excessive risk to Plaintiff's health or safety with regard to his meal trays. The Court finds that the complaint fails to allege facts supporting an Eighth Amendment violation based on Plaintiff's meal trays, and these claims must be dismissed. *See Crockett v. Core Civic*, No. 3:17-cv-00746, 2017 WL 3888352, at *3 (M.D. Tenn. Sept. 5, 2017) (finding that prisoner-plaintiff had not alleged an Eighth Amendment violation where he had not alleged that "his caloric intake during the brief periods of

his food restriction is insufficient to sustain health or that he has sustained any injury, *i.e.*, illness or significant weight loss, as a result of the food he is served." With regard to Plaintiff's complaint about a lack of bread or other items on his allergy meal trays, "[t]he fact that he finds those meals to be unappealing or nutritionally imperfect does not establish that they pose an uncivilized or intolerable condition." *Sims v. Mich. Dep't of Corr.*, 23 F. Appx. 214, 216 (6th Cir. 2001) ("The fact that Sims may have been served one cup of fruit as part of a six-meal-per-day diet does not establish a deprivation of nutrition necessary to sustain his physical well-being. Furthermore, Sims did not allege that he was denied sufficient food on a daily basis or that he could not maintain his health based on the diet provided him even though one of the six meals he received per day may have consisted of one cup of fruit."); *Cunningham*, 667 F.2d 565, 566 (inmate's Eighth Amendment rights were not violated when he was served one meal a day for fifteen consecutive days because that meal was sufficient to maintain normal health). This claim will be dismissed for failure to state a Section 1983 claim upon which relief can be granted.

**F. Dental Hygiene Supplies**

Finally, the complaint alleges that the Davidson County Sheriff's Office and its dental staff have refused to provide him with dental floss. (Doc. No. 1 at 15). In a grievance response form attached to Plaintiff's motion to amend, officer A. Buchanan tells Plaintiff that, "due to safety concerns, dental floss is not provided by security." (Doc. No. 4 at 9). Maintaining necessary safety precautions is a legitimate, non-punitive government objective. *See Bronson v. White*, No. 1:05-CV-2150, 2007 WL 3033865, at *2 (M.D. Pa. Oct. 15, 2007) (noting that "dental floss could be used to fashion weapons, garrote staff and other inmates, and interfere with locking mechanisms."); *Burke v. Webb*, No. Civ. A. 707-CV-00017, 2007 WL 419565 (W.D. Va. Feb.1,

2007) (holding that "[i]n light of the potential security threat the presence of dental floss presents to institutional staff and other inmates ... the prison's policy [is reasonable].").

Despite the prohibition against dental floss, it appears that Plaintiff has been receiving dental care, including cleanings, while detained at the Davidson County Sheriff's Office facility. (Doc. No. 4 at 5). Plaintiff does not allege that he has been denied a toothbrush, toothpaste, or regular dental examinations. Moreover, the complaint does not allege that any Defendant responsible for Plaintiff's dental care was deliberately indifferent to Plaintiff's dental needs. In fact, it is clear that Plaintiff was not denied dental floss based upon deliberate indifference to his serious medical needs but instead was denied the floss based upon the security risk to the other inmates and the staff at the Davidson County Sheriff's Office. *See Perez-Gutierrez v. Lampert*, No. Civ. 00-1689-HA, 2002 WL 31689536, at *9 (D. Or. Sept.30, 2002) (finding that there was no deliberate indifference to the serious medical needs of an inmate when a prison official removed excess dental floss from a cell based upon security interests of the facility). This claim will be dismissed for failure to state a Section 1983 claim upon which relief can be granted.

## V. Conclusion

For the reasons explained herein, Plaintiff's motion to add supplemental pleadings (Doc. No. 4), which the Court construes as a motion to amend the complaint, will be granted.

Having screened the amended complaint pursuant to the PRLA, the Court finds that Plaintiff's claims must be dismissed for failure to state claims upon which relief may be granted under Section 1983. 28 U.S.C. § 1915A. All claims and defendants, therefore, will be dismissed. 28 U.S.C. § 1915(e)(2).

An appropriate Order will be entered.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE